IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br>v.<br><br>SIXTY-TWO THOUSAND, NINE HUNDRED EIGHTY-NINE DOLLARS AND FIVE CENTS ($62,989.05),<br><br>        Defendant. | CIVIL NO. 1:2024-_____ |

**DECLARATION OF SPECIAL AGENT JAMAAL WESTBY**

I, Jamaal Westby, under penalty of perjury declare as follows:

1. I am employed as a Special Agent with the Federal Bureau of Investigation (FBI). A federal law enforcement agency within the Department of Justice. I am currently assigned to the San Juan Division of the FBI, St. Croix Resident Agency, located on the island of St. Croix, U. S. Virgin Islands. I have been employed with FBI since September 2017.

2. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States authorized by law to conduct investigations of, and to make arrests for offenses enumerated in Title 18 of the United States Code. Prior to beginning by duties with the FBI, I completed training at the FBI Academy in Quantico Virginia. As an FBI Special Agent my duties include, but are not limited to, conducting criminal investigations involving fraud against the United States, public corruption, and other white-collar crimes.

**PROPERTY TO BE FORFEITED**

3. This declaration is offered in support of the civil complaint to forfeit funds seized on June 12, 2024, from the from the Orange Grove Branch of Banco Popular de Puerto Rico

checking account number ending in x727 in the name of Davidson L. Charlemagne and Sasha E. Charlemagne d/b/a/ Poker Run in the amount of Sixty-Two Thousand, Nine Hundred Eighty-Nine Dollars and Five Cents ($62,989.05), representing property involved in a money laundering conspiracy to defraud a federal government program, wire fraud, and false claims, in violation of 18 U.S.C. §§ 1956(h) and 1957, or, proceeds traceable to specified unlawful activity as defined in 18 U.S.C. §1956(c)(7), or a conspiracy to commit such offense.

## PROBABLE CAUSE FOR FORFEITURE

4. The information in this declaration is based upon my personal knowledge, as well as on information that I have received from witnesses and other law enforcement officers. Because this declaration is made for the limited purpose of establishing probable cause for the forfeiture of the defendant property, I have not recited each and every fact known to me as a result of my investigation. The facts providing probable cause that the defendant property is subject to forfeiture to the United States is as follows:

5. In 2017, after Hurricanes Irma and Maria, the Federal Emergency Management Agency (FEMA), mobilized resources to rebuild public and private infrastructure in the Virgin Islands. As part of those efforts, large consignments of wood were sent to St. Croix and to St. Thomas to be used for the rebuilding of commercial and residential buildings in the territory. The Virgin Islands Housing Finance Authority (VIHFA) later acquired control of this wood. Initially, VIHFA stacked the St. Croix consignment of wood in piles at Sunshine Mall, located at 1 Estate Cane, Frederiksted, St. Croix, U.S.V.I., but was asked by the owner of Sunshine Mall to remove the wood.

6. On or about May 12, 2020, VIHFA issued a public request for proposals (RFP) seeking qualified entities to submit bids for a contract to manage distribution of the woodpiles for authorized purposes and to store the wood on St Croix and St. Thomas. VIHFA intended to use

funds provided through the Department of Housing and Urban Development's (HUD), Community Development Block Grant Disaster Recovery (CDBG-DR) program, to pay for the management and storage of the wood. These funds were appropriated by Congress under H.R. 2266 – The Additional Supplemental Appropriations for Disaster Relief Requirements Act of 2017 – a bill which was signed into law by the President of the United States following hurricanes Irma and Maria. VIHFA was designated as the lead agency for administering HUD federal funds for the Virgin Islands.

## THE BID SELECTION PROCESS

7. Island Services Group (ISG) was a St. Croix company licensed to do business in the VI and had prior experience submitting bids for Request for Proposals (RFP) issued by the V.I. Government for a variety of projects.

8. **Davidson Charlemagne (Charlemagne),** is the owner of **Poker Run** and **D&S Trucking**, and during the relevant time period was employed full-time by the Virgin Islands Department of Education (VIDE), as the Director of Maintenance.

9. **Charlemagne** contacted ISG and encouraged ISG to submit a bid in response to VIHFA's RFP seeking bids to manage and store the wood. The proposed arrangement would have ISG submit the bid as the general contractor, with **D&S Trucking** serving as the subcontractor, doing all of the work required under the terms of the contract, as well as collecting a majority of the funds under the VIHFA contract. The arrangement further provided that Charlemagne's company D&S Trucking would receive approximately 87% of each check received from the VIHFA, while ISG would receive approximately 13%. Any check from VIHFA which represented reimbursement of actual expenses would be paid 100% to D&S Trucking. Anselmi agreed to this arrangement and submitted ISG's bid.

10. The ISG bid proposed to store and manage the St. Croix wood, as well as the St.

3

Thomas wood, for $2,993,500 over a three-year period. The ISG proposal included cost estimates for labor, which contemplated hiring four people on each island to undertake the following jobs: Warehouse Manager, Forklift Driver, Shipping and Receiving Associate, and Administrative Support. The cost estimates for labor were vastly inflated when compared to industry standards and were above the labor costs estimated by the VIHFA.

11. The scope of work specified in the contract called for warehouse management services necessary to control, maintain and administer construction materials at the assigned locations. Furthermore, the contract specified the contractor/subcontractor agreed to adhere to federal program guidelines and to detect and prevent fraud, waste, and abuse. The contract further required the contractor/subcontractor to have professional liability insurance of not less than five hundred thousand dollars ($500,000.00). The contract included a signed conflict of interest waiver certifying neither organization nor its staff knew of any conflict of interest and both organizations and their staff have disclosed any circumstances that would cause a reasonable person to believe a conflict of interest exists. Any such conflicts should be reported in writing.

12. As part of the bid proposal process, both VIHFA and HUD require that all contractors and subcontractors certify that they have sufficient liability insurance. On or about June 8, 2020, **CHARLEMAGNE** electronically submitted documents to the VIHFA which included a checklist on which he certified that his company, D&S Trucking, had general and automotive insurance that expired on December 18, 2020. **CHARLEMAGNE'S** certification was false, because there is no evidence that **CHARLEMAGNE** did, in fact, have the insurance that he claimed at the time that he submitted the certification. Without insurance, **CHARLEMAGNE'S** company, D&S Trucking, was ineligible to be a subcontractor on the wood storage and management contract.

13. In his submissions, **CHARLEMAGNE** also failed to disclose to the VIHFA and HUD that he was employed as Director of Maintenance for the VIDE, and he failed to disclose the fact that he would be obtaining rent-free warehouse space at the Henderson Elementary School, which was VIDE property.

14. In essence, ISG's bid, prepared by **CHARLEMAGNE,** proposed that his own company, D&S Trucking, would collect inflated annual fees from one agency of the Virgin Islands government (VIHFA) to store and manage the St. Croix wood rent free on public property owned by another agency of the Virgin Islands government (VIDE), which happened to be **CHARLEMAGNE'S** employer.

## VIHFA AWARDS THE CONTRACT

15. On January 27, 2021, **Darin Richardson (Richardson)**, who was the Chief Operation Officer (COO) of the Bid Evaluation Committee (BEC) and had total authority over all procurement and contract related decisions at VIHFA, awarded the contract to ISG and **D&S Trucking** starting on February 1, 2021 – January 31, 2024. The value of the ISG contract was significantly increased on three occasions although the scope of work for the original contract did not change.

16. After the contract was award, on or about June 7, 2021, VIHFA increased the value of the contract to $4,043,100. The purported rationale for this $1,000,000 increase was that the length of the contract terms was being increased from 2.8 years to 3.0 years. However, this rationale was false, as the contract term had originally been set for a three-year period, and its term was not extended until January 2024, over two-and-a-half years later.

17. Two months later, on or about August 20, 2021, VIHFA again increased the value of the contract to $4,319,816.50. This increase of $276,416.50 in contract price was granted to

D&S Trucking to pay for labor and equipment to move the St. Croix woodpile from Sunshine Mall to the Henderson Elementary School in August 2021. However, D&S trucking had already been collecting monthly payments under the terms of the contract for seven months for storage and management of the woodpile, starting in February 2021, and yet no such work had been done by **CHARLEMAGNE'S** company.

18. Less than two months after the August increase, on or about October 13, 2021, the VIHFA again increased the value of the contract to $4,423,644.50 even though the St. Croix woodpile remained unused and exposed to the elements at the Henderson School.

19. Finally, in January 2024, VIHFA extended the contract for storage and management of the woodpiles for an additional three years with payments averaging over $120,000 per month of federal funds from VIHFA continuing to flow into bank accounts controlled by **DAVIDSON CHARLEMAGNE** and his wife **SASHA CHARLEMAGNE**.

## PAYMENTS INTO THE BANK ACCOUNT OF DAVIDSON AND SASHA CHARLEMAGNE D/B/A/ POKER RUN

20. Since February 2021, the VIHFA paid ISG in excess of $3,600,000 in federal CDBG-DR funds – of which approximately $3,177,000 flowed directly into bank accounts controlled by **DAVIDSON CHARLEMAGNE** and **SASHA CHARLEMAGNE,** while the wood on St. Croix and St. Thomas remained almost entirely unused – stacked on pallets outdoors and exposed to the elements for over three years.

21. From February 1, 2021, until November 2022, Charlemagne collected payments from VIHFA in amounts averaging $83,000 per month, through the ISG and D&S Trucking contract agreement. The wood on St. Croix was stored at the Henderson School with no storage cost to ISG or D&S Trucking. During this period Charlemagne's company, D&S Trucking as the subcontractor received a total of $1,831,103.47 in payments from ISG. ISG issued monthly

6

payments to D&S Trucking's account at Banco Popular de Puerto Rico controlled by Charlemagne and his wife, **Sasha Charlemagne (Sasha)**. For this same time period the total inflow of funds to the D&S Trucking account was $1,987,768.53. The wood contract payments from VIHFA to ISG to D&S Trucking represents more than 90% of the funds in the D&S Trucking bank account obtained as a result of the woodpile agreement between ISG and Charlemagne as owner of D&S Trucking.

22. During the period February 2021 to November 2022, D&S Trucking expended $510,990.50 in payroll costs out of the $1,831,103.47 received from the VIHFA contract, which represents about 28% of the funds received.

23. During the period February 2021 through November 2022 the Charlemagnes' Poker Run Account received funds from ISG in excess of $120,000, or an average of $5,400 monthly in addition to funds transferred from the Charlemagne's D&S Trucking account to the Poker Run account, and tens of thousands of dollars transferred into the Poker Run account from the personal bank accounts of the Charlemagnes. There is no evidence that the Charlemagnes business Poker Run was part of the wood contract between ISG and D&S Trucking.

24. During the same period, the inflows of cash to the Poker Run account came from transfers from the personal bank accounts of Davidson Charlemagne and Sasha Charlemagne. These transfers often coincided from transfers from D&S Trucking to Davidson Charlemagne, which were then transferred to the Poker Run account.

25. Additionally, during the period January 2019 through November 2022, the Poker Run account controlled by the Charlemagnes paid out close to a million dollars in funds to pay the personal credit card debts of the Charlemagnes, to deposit funds in the individual personal bank accounts of Davidson and Sasha Charlemagne, purchase fireworks, purchase equipment, and other

7

unidentified cash and miscellaneous purchases that exceed $50,000.

26. Davidson Charlemagne and his wife Sasha knowing that the funds deposited into the bank account of Poker Run was commingled with funds derived from the fraudulently induced wood contract between ISG and D&S Trucking, conspired to conceal the source of the funds by layering in bank accounts other than D&S Trucking and to spend federal CDBG-DR funds to pay for multiple personal expenses to include credit card bills, bank line of credit, equipment, and cash transfers to themselves, fireworks, and other unidentified miscellaneous expenses.

27. The foregoing fraudulent scheme required the concerted efforts of the Charlemagnes to spend over three million dollars in a three-year period such that the only funds in the bank account at the time of the seizure was $62,989.05, which represents less than the average of $82,000 or $120,000 that flowed into the bank account of D&S Trucking every month since February 2021.

28. The FBI has probable cause to believe that when a complete analysis has been conducted of all accounts controlled by the Charlemagnes, the defendant property seized on June 12, 2024, would be traceable to the fraudulent proceeds or were commingled with fraudulent proceeds and would constitute property involved in money laundering.

29. Based on the foregoing, the FBI believes there is probable cause the defendant property in the amount of $62,989.05, representing funds seized from the bank account of David and Sasha Charlemagne D/B/A Poker Run as property involved in a transaction in violation of 18 U.S.C. § 1956(h) and 1957, or that constitutes proceeds traceable to a violation of any offense constituting Specified Unlawful Activity under Title 18 U.S.C. Section 981(a)(1)(C), as defined

in 18 U.S.C. § 1956 (c)(7)(D) and subject to forfeiture pursuant to Title 18 U.S.C. Section 981.

    I declare under penalty of perjury that the foregoing is true and correct, pursuant to 28 U.S.C. § 1746, this 4th of November 2024.

                                                        _____
                                                        Jamaal Westby, Special Agent
                                                        Federal Bureau of Investigation